[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
FINDINGS OF FACT
MEMORANDUM OF DECISION
1. On or about October 12, 1988 the Defendant gave the Plaintiff a written purchase order for 4 production marking fixtures ("fixtures") and drawings therefore.
2. The purchase order was accepted by the Plaintiff, who began work CT Page 1001 pursuant thereto.
3. The purchase order constituted a "memorial" of the parties agreement. It required Plaintiff's completion of the fixtures and drawings by November 4, 1988, and Defendant's payment of $8900.00 within 30 days thereafter.
4. The fixtures and drawings were to be provided by the Defendant to R R Associates for Defendant's client, Gerber Garment Technology Inc. ("Gerber").
5. The Defendant gave Gerber's specifications for the work to the Plaintiff prior to the date of the purchase order, and the parties discussed the work and price prior to October 12, 1988.
6. The Defendant accepted a purchase requisition and order from Gerber, requiring delivery of the fixtures and drawings "as soon as possible" after October 19, 1988 for a price of $10,480.00.
7. The Plaintiff knew the terms of the Defendant's agreement with Gerber when he accepted the purchase order.
8. Between October 21 and 25, 1988 the Plaintiff informed the Defendant that he had made a mistake in quoting the job "wanted out" of the agreement and could not meet the delivery date of 11-4-88.
9. Between October 21 and 25, 1988, the parties discussed the contract on several occasions. Both parties agreed that the Plaintiff would complete fixtures and drawings 1, 2 and 3 as soon as possible after 11-4-88 and that the Defendant would have fixture 4 and its drawing prepared by another source. The parties did not agree upon compensation due the Plaintiff for fixtures 1, 2 and 3 only. The Plaintiff testified that he told the Defendant the cost for fixtures and drawings 1, 2 and 3 would be approximately $15,000. The Defendant denied any statement of estimated cost. The Defendant stated that he would "take care of" the Plaintiff. The parties also did not agree upon the financial implications of the Defendant's obtaining fixture 4 and its drawing elsewhere.
10. The Plaintiff completed fixtures 1, 2 and 3, shipping them under invoices dated November 3, 7, 11, 16 and December 2, 1988. The drawings were provided to the Defendant on or about February 7, 1989.
11. It is the custom in the tool and die business to submit drawings after the parts and completed and accepted by the purchaser.
12. Gerber accepted fixtures and drawings 1, 2 and 3.
13. The Defendant hired Pfau Machine Inc. on November 2, 1988 to prepare fixture 4 and its drawing, and paid $7050.00 therefore, pursuant to an invoice dated March 7, 1989. CT Page 1002
14. Defendant was paid $10,480.00 by Gerber per its purchase order for all four fixtures and drawings: $5240.00 on November 2, 1988 and $5240.00 on May 8, 1989.
15. On or About April 18, 1989, Plaintiff issued five bills to Defendant for the invoices referenced in paragraph 10. The bills were for labor charges only, at a rate of $30.00 per hour, and total $12,305.00.
16. The Plaintiff paid Mr. Mark Suchcicki, a mechanical engineer, $1345.00 for preparing drawings for fixtures 1, 2 and 3.
17. No payments have been made by the Defendant to the Plaintiff.
18. The original purchase order between the parties contained no provisions that "time was of the essence" or requiring modifications thereto in writing
19. The Plaintiff testified that 80% of the value of the original purchase order related to fixtures and drawings 1, 2, and 3. The Defendant testified that 80% of the value related to fixture and drawing 4. Mr. Menin testified that 80% of the work, not value related to the fourth fixture. The cost paid by the Defendant for fixture 4 represents 79% of said value. The Plaintiff testified that fixture 1 was required in order to make fixture 4. The Plaintiff offered no evidence that Defendant's payment of $7050.00 for fixture and drawing 4 was excessive. I find that 20% of the value of the purchase order related to items 1, 2 and 3.
19. Between October 11 and 15, 1988 (prior to the parties conversations referenced in paragraph 9), the Plaintiff hired an engineer, Mr. Bruno Menin to consult regarding the entire project (all four fixtures). The Defendant paid Mr. Menin $7445.47 for his services. Mr. Menin "liked what he saw" regarding the Plaintiff's work on fixtures 1, 2 and 3. Mr. Menin was hired and paid as a liaison for the Defendant.
20. The Defendant incurred significant expense relating to the completion of the project from November 2, 1988 through April 17, 1989 including: automobile mileage at 24 cents per mile and personal travel time at $75.00 per hour totaling $2800.00; postage of $75.00; long distance telephone calls to the engineering firm of Beaton Corbin and personal telephone time at $75.00 per hour totaling $2104.97; secretarial salary $2000.00, and personal time of 200 hours at $75.00 per hour totaling $15,000.00, for a grand total of $21,979.97.
Respectfully Submitted CHARLES D. STAUFFACHER, ATTORNEY TRIAL REFEREE
MEMORANDUM OF DECISION
CHARLES D. STAUFFACHER, ATTORNEY TRIAL REFEREE
I The Contract CT Page 1003
The Plaintiff is a tool and die maker, the Defendant a manufacturer's representative. Both are "merchants" per Sec 42a-2-104 of the Connecticut General Statutes ("CGS") with respect to this transaction. The Defendant's Purchase Order of October 12, 1988 (Plaintiff's Exhibits A C) was accepted by the Plaintiff and constitutes a contract for the sale of goods per Sec42a-2-201 CGS. The contract required the Plaintiff to provide four production marking fixtures and drawings by 11-4-88 for a price of $8900.00
The Plaintiff's statements to the Defendant between October 21 and 25, 1988 set forth in paragraph 8 of the Finding that he "wanted out" of the contract and could not meet the delivery date constitute an anticipatory repudiation of the contract per Sec 42a-2-610 CGS. In accordance with this section, the Defendant was entitled: "(a) for a commercially reasonable time [to] await performance by the repudiating party; or (b) [to] resort to any remedy for breach as provided by section 42a-2-703 or section 42a-2-711, even though he has notified the repudiating party that he would await the latter's performance and has urged retraction. . ."
The Defendant elected to await performance by the Plaintiff as to fixtures and drawings 1, 2 and 3. Some of the parts were shipped on time. Invoice 0924 is dated November 3, 1988. (Plaintiff's Exhibit B). Other parts were shipped on November 7, 11, 16 and December 2. (Plaintiff's Exhibit B). The drawings for these fixtures were provided on or about February 7, 1989. The custom in the tool and die trade is to provide the drawings after completion and acceptance of all parts by the purchaser. Defendant's client, Gerber Garment Technology Inc. accepted fixtures and drawings 1, 2 and 3.
The Defendant elected to "cover" re the fourth fixture and drawing. "Where the seller fails to make delivery or repudiates. . .then with respect to any goods involved. . .the buyer may cancel and. . . `cover' and have damages under the next section as to all the goods affected. . . ." 42a-2-711 CGS. The Defendant obtained the fourth fixture and drawing from Pfau Machine Inc., which shipped the fixture on or about March 7, 1989. (Defendant's Exhibit 3).
Neither a new oral contract nor an oral modification of the existing contract resulted from the parties' conversations referenced in paragraph 9 of the Finding. First, there was no "meeting of the minds" regarding all terms of either a cancellation and new contract or a modification. The Plaintiff requested additional compensation for completing the contract. He admitted he had underestimated the cost of the job. But there is no evidence that the Defendant agreed to pay any additional compensation. Second, the Plaintiff's Complaint contains no count for recovery based on quantum meruit. Third, and most importantly, neither a modification nor a new contract would be enforceable under the Connecticut UCC.
Sec 42a-2-201 CGS provides that "a contract for the sale of goods for the price of five hundred dollars or more is not enforceable by way of CT Page 1004 action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought. . . ." Sec 42a-2-209 (3) provides that "the requirements of section 42a-2-201 must be satisfied if the contract as modified is within its provisions." A purported modification of the original purchase order remains between merchants, for the sale of goods for more than $500.00 and subject to 42a-2-201.
II Damages
The Plaintiff is entitled to recover the portion of the original contract applicable to fixtures and drawings 1, 2 and 3. While the parties dispute this allocation, as set forth in paragraph 19 of the Finding, I find that 20% of the $8900.00 purchase order relates to that work. The Plaintiff is therefore entitled to recover of the Defendant $1780, together with interest thereon at the statutory rate from January 2, 1989, 30 days from delivery of the final parts, and costs of suit.
The Defendant's "cover" for fixture and drawing 4 cost $7050, which is $70.00 less than 80% of the purchase order price. The defendant complied with Sec 42a-2-712 (1) "by making in good faith and without unreasonable delay any reasonable purchase or contract to purchase goods in substitution for those due from the seller."
Sec 42a-2-715 sets forth a buyer's rights to incidental and consequential damages following repudiation by the seller. Consequential damages, as defined in Subsection (2) are not in issue, nor are damages for goods rightfully rejected per Subsection (1). Subsection (1) also allows recovery of expenses incurred regarding effecting cover and "other reasonable expense incident to the delay or other breach." 1317 at page 741. The Defendant has failed to meet his burden of proof re incidental damages.
Neither party engaged in "unfair or deceptive acts or practices in the conduct of any trade or commerce" in violation of Sec 42-110b CGS, and neither party is awarded punitive damages or attorneys fees per 42-110g(a) and (d).
The Defendant's Special Defense set forth in his Amended Answer of January 11, 1990 is inapplicable to this case. The Fair Debt Collection Practices Act (Exhibit 11) by its terms, applies only to debts where "the subject of the transaction are primarily for personal, family or household purposes." Sec 803(5).
Judgment may enter for the Plaintiff on the First Count of his Complaint in the amount of $1,780.00, together with interests and costs.
Respectfully Submitted CHARLES D. STAUFFACHER, ATTORNEY TRIAL REFEREE CT Page 1005